## STATE EX REL. ED. HARRIER AND OTHERS v. VILLAGE OF SPRING LAKE PARK.[1]

July 22, 1955.

No. 36,363.

---

[1]Reported in 71 N. W. (2d) 812.

*Hall, Smith & Hedlund* and *Thomas G. Forsberg,* for relators.
*William J. Fleming* and *Theodore Glasrud,* for respondent.

NELSON, JUSTICE.

This is a proceeding by writ of quo warranto to have the validity of the annexation of certain land to the village of Spring Lake Park determined. The land involved lies within a larger area in respect to which proceedings were pending purporting to establish said larger area as the village of Blaine. The area subject to the annexation proceedings will hereafter be referred to as the disputed area.

The village of Spring Lake Park was formed by incorporation, completed December 31, 1953, pursuant to the provisions of L. 1949, c. 119, as amended, now coded as M. S. A. 412.011 to 412.921, inclusive. It was originally incorporated with a territory of an aggregate area of 1,280.25 acres made up of a rectangular tract of land containing 1,250.75 acres in Anoka county and in adjoining irregularly shaped tract of land containing 33.5 acres in Ramsey county. The first village officers of the village were elected at an election held on January 16, 1954.

Until January 29, 1954, that part of Blaine township, Anoka county, specifically described by metes and bounds in paragraph V of the writ of quo warranto (which will hereafter be called the Blaine territory) existed and was governed as an organized town under the name of the town of Blaine. The Blaine territory covers an area of 21,567 acres and includes the disputed area.

On January 5, 1954, certain residents of the Blaine territory petitioned the board of county commissioners of Anoka county to call an election to determine whether the township should then be incorporated as a village. Pursuant to the statute, the county board took the necessary proceedings and ordered an election to take place

on January 27, 1954. Notices of election were then duly posted and the election was held on the date fixed. These proceedings were conducted in accordance with § 412.011.

On January 16, 1954, the council of the village of Spring Lake Park acted upon a petition for the annexation of a certain portion of the township of Blaine to the village of Spring Lake Park, this being the disputed area, proceeding under § 412.041. An election was ordered and the date fixed for January 26, 1954, the applicable statute on annexation requiring ten days' notice of election and the applicable statute for incorporation of a village requiring 20 days' notice of election.

Under the proceedings taken by the two municipal subdivisions, the election under the annexation proceeding occurred January 26, 1954, and the election under the incorporation proceeding occurred January 27, 1954. The residents within the disputed area voted in favor of annexation to the village of Spring Lake Park on January 26, 1954, and the documents of annexation were on January 27, 1954, filed with the auditor of Anoka county, the auditor of Ramsey county, and the secretary of state for Minnesota. On January 27, one day later, the residents of the Blaine territory voted in favor of incorporating said area as the village of Blaine and this area included the disputed area. The incorporators filed the incorporation documents and the election certificates with the county auditor of Anoka county. The said county auditor then certified a copy of the incorporation documents and they were filed with the secretary of state for Minnesota January 29, 1954, at 1 p. m.

There was included in the disputed area land which is located more than one and one-half miles from the village limits of the village of Spring Lake Park, the distance from the northeast corner of the village limits of Spring Lake Park to the northeast corner of the disputed area being 1.65 miles. The land located outside the one and one-half mile radius consists of 16 acres which is uninhabited, and it is conceded that its inclusion by the village of Spring Lake Park was unintentional.

The issues involved are whether a village acting pursuant to § 412.041 can annex territory which is then included within a larger area in respect to which there is already pending proceedings, the purpose of such proceedings being to incorporate such larger area as a village. There is also involved whether an annexation instituted under § 412.041 is invalid if it includes land located more than one and one-half miles from the village limits of the annexing village.

There are no cases in Minnesota on priority under the circumstances here involved, that is, whether the pendency of one proceeding precludes a later proceeding regarding the same territory. There are in this state differing statutory provisions as to waiting periods before elections. The controversy here is centered upon that very fact. Proceedings for incorporation were instituted first and proceedings for annexation later. The minimum waiting period between the date of filing of a petition for incorporation as a village and the date of election is 20 days and the minimum 10 days between the date of filing of a petition for annexation of a territory to a village and the date of the election. This has made it possible as was done here for an annexation proceeding which was instituted after the filing of a village incorporation petition to come before the voters before the incorporation question and be completed first under the requirements of the statute. The annexation proceeding in the instant case was not yet in progress at the time the village incorporation petition was filed.

The respondent, Village of Spring Lake Park, argues that, since the legislature favored annexation proceedings by providing a shorter waiting period, it therefore intended that annexation should be allowed to stand whenever it was completed before incorporation. It seems to us, however, that the argument is equally convincing and more realistic that, since the legislature in setting the waiting periods was wholly concerned at that moment with the question of proper notice to persons in the territory rather than with any problems of preference between the two types of proceedings, the waiting period allowed before election differing as to time in the respective proceedings is not necessarily determinative. If the vote on incor-

poration is adverse, no subsequent incorporation petition involving the same territory may be brought on again within a year. § 412.011, subd. 4. There is a two-year waiting period before an annexation petition may be entertained following an adverse vote on annexing the same territory. § 412.041, subd. 5. Apparently the two sections are nonreciprocal and an adverse vote on one will not bar the other.

The majority rule in this country holds that the filing of the incorporation petition precludes any later proceeding affecting any part of the same territory during the pendency of the incorporation proceeding. The same rule would apply to the filing of a petition for annexation of the same territory if it preceded the filing of the petition for incorporation. Applicable to these circumstances we find the following rule stated in 2 McQuillin, Municipal Corporations (3 ed.) § 7.22, setting forth the majority rule:

"A proceeding for the annexation of territory to a contiguous municipal corporation is ineffectual when instituted after the institution of a proceeding for the organization of the territory into a village or city, and while such proceeding is pending and undetermined. However, annexation proceedings are not precluded where the pending incorporation proceedings do not comply with the statute, or are otherwise insufficient to deprive the annexing city of jurisdiction or authority to acquire the territory involved."

This is the position taken by the relators and they cite People ex rel. Hathorne v. Morrow, 181 Ill. 315, 54 N. E. 839, as the leading authority in support of their position. The decisions of other states with one possible exception support the relators' position.[2]

---

[2] In re Incorporation of Village of St. Francis, 208 Wis. 431, 243 N. W. 315; Town of Greenfield v. City of Milwaukee, 259 Wis. 77, 47 N. W. (2d) 292; Beyer v. Templeton, 147 Tex. 94, 212 S. W. (2d) 134 (there are several Texas cases); Ind. Dist. of Sheldon v. Bd. of Supervisors of Sioux County, 51 Iowa 658, 2 N. W. 590; State ex inf. Taylor v. North Kansas City, 360 Mo. 374, 228 S. W. (2d) 762; People v. City of Monterey Park, 40 Cal. App. 715, 181 P. 825; Colquhoun v. City of Tucson, 55 Ariz. 451, 103 P. (2d) 269; State ex rel. Johnson v. Clark, 21 N. D. 517, 131 N. W. 715; Taylor v. City of Fort Wayne, 47 Ind. 274; State ex rel. Hunter v. Town of Hessville, 191 Ind. 251, 131 N. E. 46, 132 N. E. 588; State ex inf. Goodman v. Smith, 331 Mo. 211, 53 S. W. (2d) 271; see, 39 Minn. L. Rev. 553, 560 to 562, inclusive.

One case cited by the respondent, which the relators concede to be somewhat against their position but distinguishable, is Mt. Lebanon Township Appeal, 168 Pa. Super. 582, 80 A. (2d) 89. This recent Pennsylvania case reached what appears to be a conflicting result but we believe it to be distinguishable from the Morrow case and have concluded that it might be questionable whether it would be considered binding in a controversy where two separate proceedings involve the same territory despite the broad language used therein.

Under § 412.041, subd. 1, it is clear that before a village may annex any land the territory must meet the dual requirement that it abut on the village and that it be conditioned so as to be properly the subject of village government. Section 412.011, subds. 1 and 2, states how territory must be conditioned so as to be properly subject to incorporation as a village. There is no serious conflict between relators and respondent as to whether the territories involved were conditioned so as to be properly subject to the procedures taken under the statute in each case, absent the 16-acre tract of uninhabited land outside the one and one-half mile limits from the village limits.

The supreme court of Wisconsin, in In re Incorporation of Village of St. Francis, 208 Wis. 431, 433, 435, 243 N. W. 315, 316, 317, said:

"* * * If those who are attempting to direct the course of the two movements have in each instance met the statutory requirements in notice, application, survey, and other details of the proceedings required by law, the movement first started has the right of way.

\* \* \* \* \*

"* * * The legislature in its effort to give, as nearly as possible, to the people interested the means of providing for government over immediate surroundings did not, we think, at the same time devise a scheme to defeat or delay the very plan of annexation it sought to make available. To permit both * * * to go on at the same time would result in doubt, confusion, and be beneficial to no one. One proceeding ought not to be used to defeat the other; and again, as suggested by the learned trial court, 'if a proposed annexation is opposed, it should be done openly either before the common council

committee while the annexation ordinance is pending, or, if it is deemed invalid after passage, by a direct attack in a proper action in the courts, and not by attempting to set up a rival governmental organization.' "

In People ex rel. Hathorne v. Morrow, 181 Ill. 315, 319, 54 N. E. 839, the supreme court of Illinois said:

"As between courts of co-ordinate jurisdiction, the tribunal first acquiring jurisdiction retains it, and it is not to be interfered with by another co-ordinate court. The reason of the rule is, that otherwise confusion and conflict would arise. Here, power is given over the same territory to two parties authorized to act,—one a city council or board of trustees, who may attach it to a municipality to which it is adjacent; the other, a majority of the legal voters within its boundary, who may organize it into a village.

"In conformity to the foregoing rule is the case of Taylor v. City of Fort Wayne, 47 Ind. 274."

There was pending a proceeding by the proper authority to perfect the organization into a village before the petition for annexation was presented to the city. The territory involved was therefore, by a prior petition, in the process of organization into a village. We believe the sound rule, universal in its application, that "As between courts of co-ordinate jurisdiction, the tribunal first acquiring jurisdiction retains it, and is not to be interfered with by another coordinate court" is applicable where, under different statutes vesting jurisdiction in different persons or authorities, the same territory is subject either to formation into a new municipality or to annexation to an existing municipality, the jurisdiction first invoked thereby becoming exclusive. See, 43 C. J., Municipal Corporations, § 23; 62 C. J. S., Municipal Corporations, § 52. We therefore hold the aforesaid rule to be applicable to the facts and the situation presented in the instant case, the jurisdiction so called having been first invoked in the incorporation proceedings and the priority becoming exclusive.[3]

---

[3]See, Opinion Attorney General, No. 484-E-1, January 14, 1954.

Respondent attempts to challenge the validity of the incorporation of the village of Blaine on the grounds that the territory included in the incorporation is not conditioned so as properly to be subjected to village government. The Honorable J. H. Sylvestre, referee, at the time of the hearing excluded evidence as to this issue on the grounds that it was irrelevant and immaterial. This raises the question whether the respondent has the right to attack the validity of the incorporation of the village of Blaine in this proceeding.

The respondent admits that the general rule is that the existence of a municipal corporation is not subject to an attack except by quo warranto, but it contends that, where the incorporators attack an annexation on the theory that they have the right of way or priority, they have put their own incorporation to the test of legality. They cite as authority for this statement People v. City of Monterey Park, *supra;* In re Incorporation of Village of St. Francis, *supra;* State ex inf. Taylor v. North Kansas City, *supra;* and a quotation from 2 McQuillin, Municipal Corporations (3 ed.) § 7.22. In People v. City of Monterey Park, *supra,* the annexation petition showed on its face that several of the parcels included were public highways and that therefore these could not be inhabited territory. The court in that case did not consider that it was allowing a collateral attack and states its reasons in its opinion which it bases upon the evident fact that the petition was on its face not sufficient.

In State ex inf. Taylor v. North Kansas City, *supra,* it was plain from the petition that the two municipalities were trying to annex a substantially identical area. The court held that the proceeding first initiated prevailed but the court did allow respondent to attack the validity of relator's annexation. In that case the relator did not raise the objection of collateral attack nor was collateral attack discussed by the court. That case is clearly distinguishable.

In the quotation from 2 McQuillin, Municipal Corporations (3 ed.) § 7.22, it appears that the single qualification for the rule of priority expressed is that the petition for incorporation must be sufficient and legal upon inspection and analysis to invoke the jurisdiction of the proper authority and that the proceedings taken under the petition are in all respects legal and valid so as to maintain the jurisdiction

of the board or the authority in which it resides. Neither did the relator raise the objection of collateral attack in In re Incorporation of Village of St. Francis, *supra.* Defective petitions were involved in several of the cases cited. It is implicit in the cases cited by respondent that such collateral attack as they propose would not be allowed were the petitions sufficient. The Wisconsin supreme court has consistently held that a collateral attack is not allowable. See, State ex rel. Horton v. Brechler, 185 Wis. 599, 202 N. W. 144.

It is well settled in this state that *de facto* public corporations are not subject to a collateral attack and that the proper manner of challenging the corporation is through quo warranto proceedings. Evens v. Anderson, 132 Minn. 59, 155 N. W. 1040.[4] We therefore conclude that the referee properly excluded evidence challenging the validity of the incorporation of the village of Blaine on the grounds that the territory included in the incorporation was not conditioned so as properly to be subjected to village government.

The referee did not state explicitly whether he found the annexation proceeding void because of the rule of priority or because of the inclusion of land beyond the limit of one and one-half miles in the annexation territory or for both reasons. However, it is clear that the annexation proceeding was void because of the rule of priority so it is unnecessary to decide whether the entire annexation proceeding was void for the additional reason that the annexation territory included land that was located more than one and one-half miles from the annexing village or merely void as regards the 16 acres of uninhabited land that lay outside the one and one-half mile limit. There is no question but that the inclusion of this 16 acres was illegal because it was beyond the one and one-half mile limit, but whether this rendered the entire annexation proceeding void is another question which it is not necessary to decide now.

[4]State v. Honerud, 66 Minn. 32, 68 N. W. 323; St. Paul Gaslight Co. v. Village of Sandstone, 73 Minn. 225, 75 N. W. 1050; State ex rel. Hagan v. District Court, 90 Minn. 118, 95 N. W. 591; Hammer v. Narverud, 142 Minn. 199, 171 N. W. 770; Bowman v. City of Moorhead, 228 Minn. 35, 36 N. W. (2d) 7, 7 A. L. R. (2d) 1401.

The referee in his conclusions of law found from the facts that all proceedings had and taken with the view of accomplishing the annexation were null and void. As to the disputed area he found as a fact that it was not included in any other existing village; that it abutted on the village of Spring Lake Park; that it was so conditioned as properly to be subject to village government and contained a resident population of not less than 75 persons; that all the land of the disputed area except a triangular tract containing 16 acres was within one and one-half miles from the village limits, the latter being uninhabited and included in the petition through inadvertence (this being conceded throughout the proceedings); that the inclusion of the 16-acre uninhabited tract beyond the one and one-half mile limit is not controverted; and that its inclusion was illegal is not subject to dispute.

The statute is clear. A statute must be enforced literally if its language embodies a definite meaning which involves no absurdities or contradictions, the statute in such case being its own best expositor. Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812. Since we are clearly of the opinion that priority rules in the instant case and is determinative of the nullity of the annexation proceedings, and since it is conceded that the 16-acre tract was included in the petition for annexation by inadvertence and the disputed area was otherwise conditioned for annexation, we are not disposed to pursue that matter to any ultimate conclusion upon the present record. Therefore, whether this irregularity rendered the entire annexation proceeding a nullity beside the priority of the proceeding to incorporate the village is another question which it is not necessary to decide now and foreclose a situation where the facts in that respect might well be more fully explored.

We adopt the referee's findings of fact and conclusions of law, and it follows that the writ of prohibition heretofore issued should be made absolute. Since there is here involved a bona fide public question between two municipal authorities, no costs or disbursements are allowed to either party.

312

Let a writ of ouster issue to the village of Spring Lake Park and the members of its council and its officers as to the territory described in Exhibit B attached to the writ of quo warranto.